## GILBERT M. LEVINESS *against* JOHN POST.

(Decided December 31st, 1875.)

Where plaintiff took his horse to the shop of a blacksmith, whom he was in the habit of employing, and found there only two men working at the forge (and who were, in fact, servants of the defendant), one of whom, at the request of the other, shod the plaintiff's horse: *Held*, that the defendant was liable for damage done to the plaintiff's horse through negligence in shoeing him; that as these men were actually servants of the defendant, alone in charge of a shop where people came at all hours of the day to have horses shod, and as they were willing to shoe the plaintiff's horse, that the plaintiff had a right to presume that they were persons of sufficient skill and employed by the defendant for that purpose, and that the defendant could not escape liability for their acts by showing that they were not employed by him for shoeing horses, but for other purposes.

APPEAL by defendant from a judgment of the general term of the Marine Court, affirming a judgment of that court entered on the verdict of a jury. The facts are stated in the opinion.

*Charles Meyer*, for appellant.

*Michael K. McCarten*, for respondent.

JOSEPH F. DALY, J.—Action for damages by reason of negligence of a servant of defendant, a horse-shoer, in improperly fastening shoe of plaintiff's horse, from which negligence, it is alleged, the horse died.

I see no reason for disturbing the verdict in this case. Plaintiff had his horses shod at defendant's shop for fifteen years; on the occasion in question he went there to have a shoe fastened; he did not see the men there who usually did that work; he found two men, employees of defendant, working, one holding a new shoe, and the other hammering with a heavy sledge; plaintiff said, "Boys, I want a shoe fastened;" the man with the shoe told the other to fasten the shoe for plaintiff, and he fastened it with nails; he appeared, to plaintiff, to make a botch of it; plaintiff told him not to prick the horse, but he kept on about his work; neither of the men objected to fastening the shoe; the two men who usually did that work came in before plaintiff left the shop; defendant carried on two kinds of business in the building where the horse-shoeing shop was— shoeing horses and making pick axes and spades; two fires and two anvils were occasionally run; the employee who directed the other to fasten the shoe, plaintiff had seen there before; at this time he was working at the second anvil, where they occasionally made shoes and fitted them. Defendant swore that the man who fastened the shoe was employed as a helper, at the wages of a common laborer, in the hardware department, and was not employed to put on shoes or to fasten shoes.

The defendant employed this man, who, with another employee, was in charge of the horse-shoeing shop when plaintiff called. At plaintiff's request to have the horse's shoe fastened, one of the men directed the other to do the work, and he proceeded to fasten the shoe. He was defendant's servant, acting in the course of his employment, certainly, and not on his own account. It is defendant's peril if his servant do more or less than he instructs him to do. Private instructions or limitations of power or employment of servants do not affect the master's liability, if the servant be in any way held out as having authority, or so placed as to give that impression to the public. For the time being the two men were alone in the shop, and upon plaintiff's request to have his horse's shoe fastened, one of them, by direction of the other, proceeded to do it. The liability of the master for their acts arises in this case from the circumstances that they were actually servants of defendant; alone in

charge of a shop where people came at all hours of the day to have horses shod; that they did the work plaintiff requested, and that there was not only nothing to warn plaintiff of the extent of their authority, but he had a right to presume, finding them there and willing to do the work, that they were persons of sufficient skill employed by the master of the shop for the purpose of fastening horses' shoes. It seems to me that if an apothecary left his shop in charge of one who knew nothing about mixing drugs, but who prepared a prescription for a customer, who, from the circumstance of his being in charge of the shop, believed him authorized and competent, the apothecary would be liable for any injury caused by negligence and ignorance in the preparation of the prescription. .

The jury were authorized by the evidence to find that the negligence of the defendant's servant produced the injury; plaintiff saw that the man was awkward about it, and it is a fact that he was not a skilled workman, but a laborer. The shoe was fastened Friday or Saturday morning; on Monday afternoon the horse went lame; defendant's foreman took the shoe off that night; next morning the hoof was examined, and a piece of nail found in it. The inevitable conclusion is that it had been driven up in fastening the shoe two or three days before.

The jury was not bound to conclude that plaintiff's care of the horse caused his loss; plaintiff had the shoe taken off the night of the afternoon he went lame, by one of defendant's men; soaked and poulticed the foot; soaked it next morning.; took the horse to defendant's shop to be examined; had the piece of nail extracted by defendant's men; took the horse home, doctored him and soaked and poulticed the foot; went on the sixth day to defendant, who sent a veterinary surgeon, who doctored the horse his own way, and under whose prescribed treatment the horse died. Defendant was examined as an expert, and found fault with plaintiff's treatment, but the only thing suggested by him which plaintiff did not do was to "apply a little turpentine" to the horse's foot when the shoe was taken off. What the effect of the turpentine would have been, and how it would have helped the difficulty, he does not state; nor does it appear that he ever cured a horse injured in

this way by the use of it. Robert Chauner, a veterinary surgeon, was examined on behalf of defendant, but he gave no evidence tending to show that the horse had not been properly treated.

The judgment should·be affirmed, with costs.

CHARLES P. DALY, Ch. J., and LOEW, J., concurred.

Judgment affirmed.